IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
*Richmond Division*



CHARLES JOSHUA WOOD,       )
                                     )
                                     )
v.                                  )
                                     )
                                     )
JOHN A. WOODSON, Warden       )

**MEMORANDUM OF LAW IN SUPPORT OF WOOD'S
PETITION FOR WRIT OF HABEAS CORPUS
PURSUANT TO 28 U.S.C. § 2254**

12.   *The following are grounds on which Wood claims he is being held in violation of the Constitution, laws, or treaties of the United States.*

<u>**Ground One**</u>:  Trial counsel rendered ineffective assistance of counsel when he failed to advise Wood of his rights with respect to entering a guilty plea and the rights he waived as a result of the plea.   The ineffectiveness of trial counsel was due to his then-existing mental health condition/cognitive impairment.

## SUPPORTING FACTS

Wood was charged with and pled guilty to object sexual penetration, in violation of Virginia Code § 18.2-67.2, in the Circuit Court of Chesterfield County, Virginia. The victim was his 16 year-old stepdaughter, referred to by her initials S.O.  Wood was initially represented by Attorney John Rockecharlie.  Attorney Rockecharlie engaged in plea discussions with the Commonwealth Attorney, however, just as Rockecharlie was coming

1

back into the country from a vacation in late June 2011, he was informed

that Attorney Michael Morchower had been retained by Wood. Attorney

Rockecharlie turned his file over to Attorney Morchower. On June 23,

2011, Attorney Morchower filed his substitution of counsel form, noting his

representation of Wood. The Circuit Court entered the Order substituting

Attorney Morchower on June 29, 2011, just one day prior to the entry of the

guilty plea by Wood. Thus, Attorney Morchower received Wood's case file

only a few days prior to Wood entering his guilty plea. Attorney

Morchower requested a continuance of the plea hearing so that he could

adequately prepare, but that motion was denied by the circuit court.

On the day of the plea hearing, Attorney Morchower appeared

confused and asked Michael Morriss, a family friend of Wood, what he

should tell Wood regarding accepting or denying the plea offer. Attorney

Morchower also told Wood that he did not know what he should do with

regard to the plea offer.

Wood accepted the plea offer and entered a guilty plea to one count of

object sexual penetration. There was no discussion of any possible penalties

on the record during the plea hearing. After the hearing, Mr. Morris, a

family friend of Wood's, asked Attorney Morchower why there was not

language in the plea agreement stating the sentence would be between 7 and

15 years, as that was what was told to Wood and his family regarding the possible sentence. Attorney Morchower acted surprised to find out it was not in the written plea agreement and ran back into the courthouse with Mr. Morris in an effort to find the prosecuting attorney. The prosecuting attorney informed Attorney Morchower and Mr. Morris that the 7 to 15 year range was the Virginia guideline range and the plea encompassed no agreement as to the length of sentence.

Between the plea hearing and sentencing, Wood underwent a psychosexual evaluation by Dr. Evan Nelson, as ordered by the court. Dr. Nelson's report, dated September 23, 2011, revealed the following:

-Wood had no criminal history as a juvenile or an adult;

-Wood and his wife were having serious marital issues, both with their relationship and in financial matters;

-Dr. Nelson stated that Wood's stress in his personal life and in his marriage laid the groundwork for the offense. On the night in question, Wood was drunk, lonely, and aroused and allowed his behavior to cross the line into criminal with the victim, his 16 year-old stepdaughter.

-Nothing in Wood's case indicated an enduring sexual deviancy.

-The reasons for Wood's offense were emotional and intimacy deficits rather than deviant sexual interests.

-Wood is at a low risk for new sex offenses.

-Wood possessed many attributes that are associated with success in treatment and probation.

Overall, Dr. Nelson's report painted a picture of a man who had been living with serious stressors in every aspect of his life. He had always been a hard worker, was college-educated, and had never committed a criminal offense, much less an offense similar to the one to which he pled. Dr. Nelson's report also noted that Wood was very amenable to treatment and would likely not re-offend.

Dr. Nelson's psychosexual report was provided to both the Commonwealth Attorney, Wood's counsel – Attorney Morchower -- and the court on September 23, 2011. The prosecuting attorney contacted Dr. Nelson with concerns about his report and Dr. Nelson sent out an email on September 28, 2011, addressing those concerns. The email went to both the prosecutor and Attorney Morchower. In this email, also labeled an "Addendum," Dr. Nelson responds to what are clearly objections by the prosecutor to the conclusions reached in the Psychosexual Evaluation Report that are in favor of Wood with regard to him being amenable to treatment and the likelihood that he would not be a risk to the community and not re-offend. Dr. Nelson addresses each of the prosecutor's concerns and, most notably, reiterates that Wood is at "low risk" to commit new crimes, that Wood was not motivated by a persistent deviant sexual interest, that Wood is amenable to treatment, and that Wood accepted responsibility for his crime

4

when interviewed by Dr. Nelson – providing more evidence that he is not likely to re-offend.

At the sentencing on November 3, 2011, the court inquired as to whether Attorney Morchower had reviewed the documents (the Presentence Report, the psychosexual evaluation, and the victim-impact statement) and whether he reviewed them with the defendant, to which Attorney Morchower answered "no." (Sentencing Tr. P. 4). Attorney Morchower then added that "[w]e generally know what they – the information, Your Honor. I don't think there's any issue." (Sentencing Tr. P. 4). Upon further inquiry, Attorney Morchower told the court that he had failed to review the victim-impact statement with Wood. The court then took a brief recess to allow Wood and Attorney Morchower to review the victim-impact statement.

The sentencing hearing then proceeded and the Commonwealth Attorney called Dr. Nelson to the stand. On direct examination, counsel for the state elicited testimony from Dr. Nelson that there is no way to *guarantee* a defendant would not reoffend, except to incarcerate him until he was 60 years old. (Sentencing Tr. P. 9-10) (emphasis added).

After direct examination, Attorney Morchower asked questions of Dr. Nelson. However, other than referencing Wood's lack of mental illness, his

work history, the fact that he was drinking on the night of the offense, his lack of criminal history, and the fact that he had admitted that he committed a sex offense, Attorney Morchower did not question Dr. Nelson on the parts of his report that explained what led Wood to commit the offense. The sentencing transcript does reveal, however, that Attorney Morchower repeatedly asked the same questions regarding Wood's lack of mental illness (sentencing Tr. P. 13 &18).

Attorney Morchower *did not* question Dr. Nelson about Wood's clear remorse for what he had done, he did not ask about Wood's apparent honesty when being interviewed by Dr. Nelson, and did not elicit other facts appearing in Dr. Nelson's report that reflected favorably on Wood. At the end of his examination, Attorney Morchower concluded by saying that it was not his job to "minimize" Wood's conduct. (Sentencing Tr. P. 19).

The Commonwealth Attorney then called the victim's father as a witness. (Sentencing Tr. P. 22). At the close of the state's evidence, Attorney Morchower announced that he was not presenting any evidence or calling any witnesses. At that point, Attorney Morchower presented his argument to the sentencing court. His remarks, found on pages 26 through 31 of the Sentencing Transcript, are rambling, vague and repetitive. He begins by stating that this is a "sad case," that he has "never had one of these

cases," that Wood "breached everybody's confidence," but that Morchower was "not here to beat on him." (Sentencing Tr. P. 26-27).  Morchower then goes on to say that "what the young lady said happened, happened[,]" that Wood's conduct "was despicable," that Wood does not deserve to be "kicked and kicked forever and ever and ever[,]" but "maybe he does." (Sentencing Tr. P. 27).

In the middle of Attorney Morchower's rambling and disjointed sentencing argument, Wood announced "I want to speak." (Sentencing Tr. P. 27).  To this, Attorney Morchower stated "[h]e's never been in a courtroom." This, clearly, was not true, as Wood had appeared many times in court during the pendency of this case.  Then Attorney Morchower announced that Wood "ought to get disciplined" but that they were asking for "discipline in single digits." (Sentencing Tr. P. 28).  A recess was taken at that point and when court resumed, Attorney Morchower presented two letters to the court, one from each of Wood's parents. (Sentencing Tr. P. 29).  At that point, Attorney Morchower asked the court for the *third time* to make sure Dr. Nelson's report was made part of the record. (*Id.*).  When the court asked Attorney Morchower if he had further argument on behalf of Wood, he responded "I think I have." (*Id.*).

Attorney Morchower then goes on to repeat the same incoherent "argument" that he had moments earlier presented. He repeats that Wood has no mental illness and again tells the court how Wood deserves punishment, that he wrecked lives, that he should have known better, and that his actions will have collateral consequences. Attorney Morchower then goes into some sort of stream of consciousness argument about others who appear before the court, facing consequences of their misconduct, and does not ever offer specific arguments about Wood. (Sentencing Tr. P. 29, lines 17-25). In his conclusion, Attorney Morchower states that Wood is not a kid and that he "needs to be whacked, there's no question about that." (Sentencing Tr. P. 31).

The high end of the recommended guidelines for Wood's offense was 15 years. The Court sentenced Wood to 40 years imprisonment and suspended 21 years. As Wood was 41 at the time of sentencing, it appears the court imposed a sentence such that Wood would be 60 years old upon his release—the age Dr. Nelson stated would guarantee a person released would not reoffend.

On November 22, 2011, Attorney Morchower filed a Motion to Recuse and Set Aside the 19 Year Sentence and Order a New Trial with a Newly Appointed Judge and Commonwealth Attorney, which was later

amended. In this Motion, it is clear that Attorney Morchower believed that he had an agreement with the Commonwealth Attorney that the state would request a 15-year sentence. (At sentencing, the Commonwealth requested a 20-year sentence. Sentencing Tr. P. 36). Counsel for the state flatly denies ever having agreed to a sentence or sentence recommendation in Wood's case.

Attorney Morchower also indicated that he did not advise Wood of the possible sentences that he could receive. (Amended Motion, p. 2, ¶ 3). The Amended Motion, as a whole, is convoluted and makes vague arguments about Wood being denied due process and equal protection of the law. (Amended Motion, p. 2, ¶¶ 3-4). The Commonwealth Attorney's response to the Amended Motion labels Morchower's claims "completely untrue" and states that Morchower's claim about the sentencing judge's bias and the denial of equal protection and due process of law (contained in ¶ 4 of the Amended Motion) "appears to show counsel's complete lack of understanding of the system he has practiced in for decades." (Commonwealth's Response to the Defendant's Amended Motion to Recuse, Set Aside the Sentence and for a New Trial, p. 4).

The Circuit Court never ruled on Morchower's Amended Motion, as it was withdrawn by Attorney David Epperly. Wood did not retain Attorney

Epperly, rather it appears Epperly was hired by Morchower, or appointed by some other entity, to wrap up Morchower's existing cases.

No other post-trial motions were made on behalf of Wood and there was no notice of appeal filed. Wood filed a Petition for Habeas Corpus in the Circuit Court of Chesterfield County, Virginia. The claims raised were that 1) Attorney Morchower rendered ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendments by failing to adequately advise Wood of his right to appeal, failing to advise Wood as to whether his plea of guilty prevented post-trial motions, and whether Wood had legal defenses that could be asserted at a trial on the merits. (State Habeas Petition p. 4). These failures, Wood asserted, were due to his attorney's medical deterioration. (Id.). Wood also asserted the claim that his constitutional rights were denied when the circuit court refused a continuance to allow attorney Morchower time to prepare and investigate the case. (State Habeas Petition, p. 11).

The circuit court denied all of Wood's claims after conducting a hearing. The state court found that Wood had not shown that his attorney was ineffective with respect to the claims of ineffective assistance of counsel under the *Strickland* analysis. (Order of Circuit Court, February 5, 2013).

## SUPPORTING LAW

The Anti-Terrorism and Effective Death Penalty Act of 1996, Pub.L.

No. 104-132, 110 Stat. 1214 (the "AEDPA"), provides, in relevant part, that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits unless the adjudication of the claim-
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Frazer v. S. Carolina*, 430 F.3d 696, 703 (4th Cir. 2005) (citing 28 U.S.C. §

2254(d); *see also Williams v. Taylor*, 529 U.S. 362, 402-13, 120 S.Ct. 1495,

146 L.Ed.2d 389 (2000) (discussing § 2254(d))).

The phrase "clearly established Federal law, as determined by the

Supreme Court of the United States" requires that federal courts assess the

validity of the inmate's claims based on the holdings of the Supreme Court

"as of the time of the relevant state-court decision." *Williams v. Taylor*, 529

at 412. A state habeas court unreasonably applies clearly established

Federal law when it "identifies the correct governing legal principle ... but

unreasonably applies that principle to the facts of the prisoner's case." *Id.* at

413.

11

The Supreme Court case of *Strickland v. Washington*, 466 U.S. 668 (1984), establishes "the extent and nature of counsel's obligations to the defendant and a two-part test for assessing whether counsel has proved ineffective in discharging those obligations." *Frazer*, 430 F.3d at 703. The two-part test is first, whether counsel's efforts were objectively unreasonable when measured against prevailing professional norms and, second, whether counsel's performance, if deficient, prejudiced Wood. *Id.* This two-part test announced by *Strickland* "unquestionably qualifies as 'clearly established' federal law under § 2254(d). *Id.* at 703-704.

To assert an ineffective assistance claim in the context of a guilty plea, a modified version of the two-part "performance and prejudice" test outlined in *Strickland v. Washington*, 466 U.S. 668 (1984), is to be applied. To prevail, Wood must show "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

The decision to plead guilty "frequently involves the making of difficult judgments." *Brady v. United States*, 397 U.S. 742, 756-57 (1970). "In the face of unavoidable uncertainty, the defendant and his counsel must make their best judgment as to the weight of the State's case. Counsel must

12

predict how the facts, as he understands them, would be viewed by a court."
*Id.* Thus, a guilty plea is open to attack on the ground that counsel did not
provide the defendant with "reasonably competent advice." *Cuyler v.
Sullivan*, 446 U.S. 335, 344 (1980) (quoting *McMann v. Richardson*, 397
U.S. 759, 770-71 (1970)).

## ANALYSIS

The state circuit court unreasonably applied clearly established federal
law when it found that Wood had failed to present sufficient evidence under
*Strickland's* prejudice prong for this claim. Specifically, the circuit court
found that the majority of the evidence refuted the argument that, but for
counsel's errors, there is a reasonable probability that Wood would not have
pled guilty. This finding is in error because the state circuit court ignored
the facts surrounding Attorney Morchower's mental impairment from which
he was clearly suffering during the pendency of the case and the impact it
had on Wood's decision to enter a guilty plea.

The record is replete with confusion on the part of Attorney
Morchower. He entered the case two days prior to a scheduled guilty plea
and requested a continuance, which was denied. He later stated in a motion
to the court that there was an agreement between Wood and the

Commonwealth that the requested sentence would be no more than 15 years. This allegation is flatly denied by the Commonwealth Attorney. Nevertheless, Attorney Morchower believed it existed and, therefore, his client Wood was counseled on this point and misled.

The length of any possible sentence is a substantive consideration when a defendant makes a decision as to whether to enter a plea of guilty or go to trial. Counsel's representation that there was a cap of 15 years, and Wood's entry of a plea based upon this representation, negates any finding that his plea was knowing and voluntary. *See Kelly v. Cox*, 353 F.Supp. 1050, 1052 (W.D.Va. 1972) (holding the voluntariness of a plea can be challenged when there is incompetent advice by counsel). The Circuit Court's conclusion that there was no prejudice and denial of this claim without allowing habeas counsel to subpoena the records regarding Morchower's mental state at the time of the plea hearing and sentencing was also unreasonable. Credible evidence was produced by habeas counsel showing Morchower labored under a cognitive deficit that clearly affected his performance as counsel for Wood. Misrepresenting the maximum possible sentence Wood would receive at sentencing on a guilty plea bears directly on the issue of whether or not Wood would have reasonably pled guilty or gone to trial.

"It is axiomatic that, 'to be constitutionally valid, a plea of guilty must be knowingly and voluntarily made.' And 'a guilty plea is not knowingly and voluntarily made when the defendant has been misinformed' as to a crucial aspect of his case." *United States v. Fisher*, 711 F.3d 460, 462 (4th Cir. 2013) (quoting *United States v. Brown*, 117 F.3d 471, 473 (11th Cir.1997)). A decision to enter a guilty plea must involve a voluntary and intelligent choice among the alternative courses of action. *Hill v. Lockhart*, 474 U.S. at 56. If trial counsel is incompetent, then any advice given by him to the defendant is likewise incompetent. *See Kelly v. J.D. Cox*, 353 F.Supp. 1050, 1052 (W.D. Va. 1972). A guilty plea is "open to attack on the ground that counsel did not provide the defendant with 'reasonably competent advice.'" *Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980) (quoting *McMann v. Richardson*, 397 U.S. 759, 770-71 (1970)).

During the plea colloquy in state court, there was no mention of the maximum possible penalty Wood faced. Given Attorney Morchower's statement that he believed the cap was 15 years, in conjunction with the uncontroverted evidence that counsel was suffering from a debilitating mental condition, the circuit court's blanket conclusion that Wood suffered no prejudice is an unreasonable application of the *Strickland* standard.

15

The possibility of filing post-trial motions and an appeal are also legal rights that Wood should have been properly advised of by his counsel prior to entering his plea of guilty. However, Attorney Morchower's representations to the Circuit Court in his post-trial motion clearly show that he believed a Motion to Reconsider could be filed. In fact, Attorney Morchower filed such a Motion, but it was withdrawn, albeit by counsel who was brought into the case by either Morchower, or some other body (perhaps the Virginia State Bar), to wrap up any of Morchower's existing cases. The affidavit by Wood's family friend that relayed the incident wherein Morchower said that he had surrendered his law license due to problems with his mind provided further evidence to the circuit court of Morchower's mental infirmity during the plea hearing and sentencing of Wood, as well as during the post-trial motions period. Thus, it cannot be said that Wood knowingly and voluntarily entered his plea of guilty, rather than going to trial, given the confusing and incorrect information he was provided by his counsel at all stages of the proceedings. If Wood's attorney had investigated the case and subpoenaed evidence, given the government's position on what sentence it would seek against Wood, there is a likelihood that Wood would have rolled the dice and gone to trial. Given the sentence he received on a plea – 19 years – and the fact that he believed he would

receive a sentence between 7 and 15 years, it is reasonable to conclude that Wood would have asserted his right to a trial rather than admit to a crime that would result in his incarceration until he was 60 years old.

Based on the foregoing, the state circuit court unreasonably applied clearly established law when it identified the *Strickland* test, but unreasonably applied it to Wood's claim.

Wood did not appeal from the judgment of conviction.

Wood did raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court.

Wood filed an appeal of the state trial court's denial of his writ of habeas corpus to the Supreme Court of Virginia, which denied his petition for appeal.

**Ground Two**: Trial counsel rendered ineffective assistance of counsel when he failed to investigate possible defenses Wood could present at trial. The ineffectiveness of trial counsel was due to his then-existing mental health condition/cognitive impairment.

## SUPPORTING FACTS

Wood incorporates the facts as stated in support of Ground One.

## ANALYSIS

Trial counsel failed to investigate possible defenses Wood could have raised and state habeas counsel presented evidence that there were voicemails and/or texts indicating that there may have been evidence of consent on the part of the victim. (Petition, p. 10-11). At the very least, the voicemails and texts could have provided mitigating evidence. However, Attorney Morchower indicated to Wood's family that he had never subpoenaed such information and did not know how to accomplish this.[1]

Thus, the circuit court's conclusion that Wood failed to meet the prejudice prong simply because he admitted his guilt to the charge does not

---

[1] The Circuit Court again glossed over the evidence presented by habeas counsel that Attorney Morchower failed to subpoena evidence that would have gone to the issue of consent. Rather, the court simply concluded that it could not conceive how consent could have been argued given Wood's admissions of certain acts. The court also concluded that, given Wood's admission of guilt, it was unlikely that a defense of consent could have been presented.

resolve the question[2] of whether or not there is a reasonable probability that he would not have admitted guilt if he had received effective assistance of counsel. Furthermore, the circuit court improperly relied on *assumed* representations of Wood's previous attorney John Rockecharlie. There was no evidence presented to the circuit court regarding what Wood's first attorney, John Rockecharlie, told him regarding a plea versus going to trial or what investigation he conducted. Accordingly, it is inconceivable that the state court can rely on the representations of previous defense counsel and assume that this previous counsel properly investigated the case and advised Wood when Wood was not asked at the plea hearing whether his former counsel had adequately explained his legal rights to him and/or explored the possibility of a defense.

It matters not whether Wood admitted his guilt during the guilty plea hearing when deciding whether there is a reasonable probability that, but for counsel's errors, he would not have pled guilty. More than guilt or innocence goes into a defendant's decision to plead guilty. There are considerations of possible defenses, mitigating evidence, possible sentences available on either a plea of guilty or a trial, and whether sufficient effort is made on the part of trial counsel to discern whether there is favorable

---

[2] "The Court can find no evidence of Mr. Wood ever denying his guilt." (Opinion, Jan. 8, 2013).

19

evidence to present at trial or sentencing.  *See Lockhart*, 474 U.S. at 56

(decision to plead guilty is a knowing and intelligent choice between

alternative courses of action).  Attorney Morchower, however, failed to

provide Wood with any guidance on these issues, as he was precluded from

doing so due to the cognitive impairment under which he labored.

The overwhelming evidence in the record establishes that Morchower

was at times confused, presented untrue statements, and made admissions to

Wood's family that he was not sure what to do or say at the sentencing

hearing.  Given this evidence, it was error for the circuit court to gloss over

the very real possibility that Attorney Morchower was incompetent during

the pendency of Wood's case.  All of the evidence of counsel's mental

infirmity is underscored by the fact that an independent attorney suddenly

appeared in Wood's case and withdrew, without explanation, the nonsensical

post-trial motions filed by Morchower.

"[W]hen there is a question about a defense attorney's mental

competence, a hearing is required when there is substantial evidence that an

attorney is not competent to conduct an effective defense."  *Smith v. Ylst*,

826 F.2d 872, 877 (9th Cir. 1987).  In *Ylst*, the trial court did not hold a

hearing as to counsel's competency, but it did make findings based on

observations and found it did not have substantial doubt as to counsel's

competence.  Here, however, the state habeas court did not even address the evidence and allegations of incompetence and made no findings one way or the other as to observations of counsel by the court or anyone else.  This was error by the state court, as sufficient evidence existed to raise a legitimate question as to defense counsel's competence.

Accordingly, the state court unreasonably applied the well-established *Strickland* test to Wood's claim of ineffective assistance of counsel due to attorney Morchower's failure to investigate possible defenses due to his mental impairment.  Moreover, there is a reasonable probability that Wood would not have pled guilty and would have insisted on going to trial given the open-ended sentencing he faced and the possible defense/mitigation of consent that could have been raised if his counsel was able to subpoena records of voicemails and texts messages.

Wood did raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court.

Wood filed an appeal of the state trial court's denial of his writ of habeas corpus to the Supreme Court of Virginia, which denied his petition for appeal.

**Ground Three**: Wood was denied his Constitutional rights when the trial court refused a continuance to allow trial counsel time to prepare and investigate the case. Thus, Wood's Sixth Amendment right to competent counsel was denied, as was his right to Due Process of Law.

### SUPPORTING FACTS

Wood incorporates the facts as stated in support of Ground One.

Wood had no opportunity to discover his counsel's mental disease, prior to entering the plea, nor did he have cause to inquire. For many years, Attorney Morchower was well known in the criminal defense world and his reputation as a seasoned and competent lawyer preceded him. Thus, when Wood retained him, he presumed he was fit to practice law and was not suffering from a mental disease that prevented him from rendering competent assistance of counsel.

Just days after noting his appearance, attorney Morchower sought a continuance from the circuit court in order to prepare and investigate the case. The circuit court denied the continuance on the day of the scheduled guilty plea, although this occurred "off the record" and prior to the court reporter transcribing the proceedings. (Exhibit I to State Habeas Petition).

## SUPPORTING LAW

A petitioner must satisfy two elements in order to secure relief on a claim that the trial court violated the Constitution in refusing to grant a continuance. *Hill v. Ozmint*, 339 F.3d 187, 196 (4th Cir. 2003). First, he must establish that the trial court abused its discretion in denying the continuance motion and, second, that the trial court's erroneous ruling prejudiced his defense. *Id.* (citing *Unger v. Sarafite*, 376 U.S. 575, 588-89 (1964); *Morris v. Slappy*, 461 U.S. 1, 11 (1983); and *United States v. Colon*, 975 F.2d 128, 130-31 (4th Cir. 1992). "Although a 'matter of continuance is traditionally within the discretion of the trial judge," a trial court is not entitled to deny a continuance because of a 'myopic insistence upon expeditiousness in the face of a justifiable request for a delay." *Ungar*, 376 U.S. at 589.

## ANALYSIS

The request for a continuance was not unreasonable based on the limited amount of time Morchower had been counsel of record. The evidence established that Morchower received the case file from attorney Rockecharlie only a few days before the scheduled guilty plea hearing. (Exhibit C, State Habeas Petition). The state court entered the order of substitution of counsel just one day prior to the guilty plea hearing. Thus,

Morchower had been on the case approximately one week when he and Wood appeared to enter a plea.

Prejudice to Wood resulted because he proceeded to enter a plea of guilty with an attorney who was incompetent and labored under a mental/cognitive disability, rendering him incapable of giving sound counsel or advice. Further, the request for a brief continuance to allow Morchower to "get up to speed" on the case was justifiable. The state court, however, denied the motion and required the parties to proceed. The record establishes, however, that Morchower gave Wood erroneous advice and counsel as to the length of sentence he could receive, he admitted to family members that he did not know what to tell Wood with respect to entry of a plea, and appeared confused afterward when a lay person pointed out to him that there was no mention of the sentence in the written plea agreement.

Based on these facts, the state court's unreasonable denial of the motion to continue denied Wood his right to have counsel who was prepared and competent to go forward.

Wood did raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court.

Wood filed an appeal of the state trial court's denial of his writ of

habeas corpus to the Supreme Court of Virginia, which denied his petition

for appeal.

Unexhausted Claims:

**Ground Four**: Wood was denied his Sixth Amendment right to effective
assistance of counsel/competent counsel because his counsel suffered from a
mental disease/cognitive impairment that prevented him from rendering
constitutionally required assistance of counsel.

## SUPPORTING FACTS

Wood incorporates the facts as stated in support of Grounds One, Two

and Three.

## SUPPORTING LAW

The right to counsel guaranteed by the Sixth Amendment is a

fundamental right. *Cuyler v. Sullivan*, 446. U.S. 335 (1980). "[W]hen

surrounding circumstances justify a presumption of ineffectiveness [] a Sixth

Amendment claim [may] be sufficient without inquiry into counsel's actual

performance at trial." *United States v. Cronic*, 466 U.S. 648, 662 (1984).

In a case strikingly similar to Wood's, the Eighth Circuit Court of

Appeals granted federal habeas relief to a petitioner whose counsel was

"suffering from Alzheimer's disease at the time of trial, which disease

prompted disorientation, loss of memory, inability to concentrate and

peculiar exhibitions of judgment." *Pilchack v. Camper*, 935 F.2d 145, 147

(8th Cir. 1991). This condition of defense counsel was discovered after

counsel's actions prompted a "searching examination of his competency[.]"

*Id.* The defendant in *Pilchak*, similar to Wood, did not know at the time that

she was represented by a lawyer suffering from Alzheimer's. *Id.* at 146.

The district court granted the defendant's § 2254 petition, finding that the

attorney was "not the counsel contemplated or required by the sixth

amendment and that [the attorney's] actions at trial contravened Pilchak's

rights under the due process clause of the fourteenth amendment." *Id.* at

147.

Wood asserts this Sixth Amendment claim for the first time in this

Court and relies on *Martinez v. Ryan*, __ U.S. __, 132 S.Ct. 1309 (2012), to

excuse any procedural default. Because Virginia requires a prisoner to raise

an ineffective assistance of trial counsel claim in a collateral proceeding, a

petitioner may "establish cause for a default of an ineffective assistance

claim" where the claim should have been raised, but counsel in the initial-

review collateral proceeding was ineffective under the standards of

*Strickland v. Washington.*

Attorney Joseph Grove filed Wood's state habeas corpus petition. He raised claims of ineffective assistance of counsel based on Morchower's failure to adequately advise Wood of his right to appeal, failure to advise Wood as to whether his plea of guilty prevented post-trial motions, and failure to determine and advise Wood as to whether he had legal defenses that could be asserted at a trial on the merits. Attorney Grove did not raise in state collateral review the claim that Wood was denied his Sixth Amendment right to competent and effective assistance of counsel based solely on Morchower's mental infirmity. The failure to specifically state this claim constitutes ineffective assistance of counsel by Grove.

The two-part test announced in *Strickland's* is first, whether counsel's efforts were objectively unreasonable when measured against prevailing professional norms and, second, whether counsel's performance, if deficient, prejudiced Wood. *Id.* State habeas counsel's failure to raise Ground Four was unreasonable given the case law that existed at the time of the filing.

The United States Supreme Court in *Cronic* held that when circumstances exist that make it so unlikely that a lawyer can provide effective assistance of counsel, ineffectiveness can be presumed. *Cronic*, 466 U.S. 648. Further, the Eighth Circuit Court of Appeals in *Pilchak*

27

addressed an almost identical situation wherein the trial lawyer suffered, unbeknownst to the defendant, from Alzheimer's disease during his representation of defendant. In that case, federal habeas relief was granted even though there had been a procedural default of the claim in the state habeas proceedings.

In an analogous case, *Burdine v. Johnson*, 262 F.3d 336, 340 (5th Cir. 2001), the Fifth Circuit found that the trial attorney's sleeping during trial amounted to constructive denial of counsel and, therefore, prejudice should be presumed in accordance with the Supreme Court case of *Strickland* and *United States v. Cronic*. While Wood's trial counsel did not "sleep" through portions of his case, his mental impairment, later solidified by the fact that an independent attorney made an appearance and "cleaned up" Wood's case, is the equivalent of being unconscious (as was the case in *Burdine*) during his representation of Wood.

Given the case law that existed at the time Wood's state habeas petition was filed, habeas counsel's failure to raise this claim was objectively unreasonable. Thus, Wood has satisfied the first prong of *Strickland*. Second, state habeas counsel's deficient performance prejudiced Wood because his claim, if raised, would have required the state court to

examine whether Morchower labored under a mental impairment that adversely affected his performance. If such an impairment was found, and Wood maintains that the evidence presented established Morchower's mental infirmity, then the state court could have presumed prejudice and granted habeas relief to Wood. Thus, Wood suffered prejudice because the state court was never presented with a claim wherein prejudice to Wood could be presumed. This is especially critical inasmuch as the state court denied all of the ineffective assistance of counsel claims on the ground that Wood had not established prejudice.

Accordingly, Wood has established that state habeas counsel was ineffective under the *Strickland* analysis. However, in order to overcome the procedural default of this claim, Wood must also show that the underlying ineffective assistance of counsel claim is a substantial one, "which is to say that ... the claim has some merit." *Martinez v. Ryan*, 132 S.Ct. at 1318.

Based on the holdings of *Cronic*, *Pilchak*, and *Burdine*, as outlined above, there is no question that Wood's underlying claim has some merit. Attorney Morchower's performance during the sentencing phase and his filing of post-trial motions, as discussed in more detail under Ground Five and as previously discussed under Ground One, was fraught with

29

"disorientation, loss of memory, inability to concentrate and peculiar exhibitions of judgment." *See Pilchak*, at 147. Following this bizarre behavior, an independent attorney appeared in Wood's case, withdrew post-trial motions and never explained his appearance to anyone, let alone Wood. It is clear that Morchower, the court, or the state bar recruited this attorney to wrap up Morchower's existing cases. Indeed, Morchower indicated he suffered from a mental impairment by pointing to his head as the reason he had been told by his doctor to shut down his practice. It is not an overstatement to say that there is overwhelming evidence that Morchower was suffering from a cognitive impairment that so affected his performance during his representation of Wood that Wood was denied his Sixth Amendment right to competent and effective counsel. Thus, Wood has met the further requirements of *Martinez* in order to excuse his procedural default of this claim, as it clearly has merit.

Based on the foregoing, Wood requests this Court find there is cause for his procedural default of Claim Four and address it on the merits.

**Claim Five**:  Wood's counsel rendered ineffective assistance of counsel at the sentencing phase, as his counsel failed to adequately prepare for the hearing and failed to elicit testimony from the expert favorable to Wood on matters of utmost importance, i.e. likelihood of re-offending, amenability to treatment, and motivation for committing the crime.  Counsel failed to render effective assistance due to his cognitive impairment that he clearly was suffering at the time of the sentencing hearing.

## SUPPORTING FACTS

Wood incorporates those facts as stated in the preceding Claims One through Four.

The state circuit court completely ignored the issue of trial counsel's mental disease/cognitive impairment, despite the unequivocal evidence showing that trial counsel most certainly was suffering from Alzheimer's or some other type of dementia.  Nowhere was this more evident than at the sentencing hearing in Wood's case.

The evidence of this mental/cognitive impairment is that Attorney Morchower was confused during the sentencing hearing, asked the same questions of witnesses, repeated himself two and three times on matters of insignificance, made outrageously damaging arguments to the court on behalf of Wood, failed to elicit any of the significantly positive information contained in the Psychosexual Evaluation by Dr. Nelson, and failed to present any character evidence or witnesses on behalf of Wood, aside from the letters from Wood's parents.

Further, affidavits submitted in support of Wood's state habeas petition show that Attorney Morchower was asking lay persons what he should say on behalf of Wood at the sentencing hearing, that he had previously asked lay persons what he should do or how he should counsel Wood, and that he admitted to Wood's friends and family that he was closing his practice because of mental problems (he pointed to his head) and that his doctor told him to wind down his practice. In fact, another attorney had to appear on behalf of Attorney Morchower and withdraw the nonsensical post-trial motions that he filed. This attorney was clearly acting on behalf of Attorney Morchower because he was no longer to able to practice law.

## APPLICABLE LAW

A petitioner must show that counsel's performance was deficient, and that the deficiency prejudiced the defense. *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (citing *Strickland*, 466 U.S. at 687. In assessing counsel's investigation, we must conduct an objective review of their performance, measured for "reasonableness under prevailing professional norms," *Strickland*, 466 U.S. at 688, which includes a context-dependent consideration of the challenged conduct as seen "from counsel's perspective at the time." *Wiggins*, 539 U.S. at 523 (citations omitted). In *Wiggins*, the

Supreme Court analyzed the actions of defense counsel with regard to the

sentencing phase of a capital trial.  In finding counsel ineffective, the Court

noted that the attorney failed to focus "exclusively on [defendant's] direct

responsibility . . . [and] put on a halfhearted mitigation case, taking" a sort of

"shotgun" approach. *Wiggins*, 539 U.S. at 528.  The Court also noted that

counsel's decision to abandon the investigation of mitigation evidence after

obtaining a presentence report was unreasonable. *Is.* 527-28.

When examining the actions of trial counsel, the Supreme Court has

stated that "strategic choices made after thorough investigation of law and

facts relevant to plausible options are virtually unchallengeable." *Strickland*,

466 U.S. at 690.  Thus, effective representation that is based on "sound,

evidence-based judgment" will not be deemed unreasonable.  Attorney

Morchower's performance at trial was not sound, nor was a strategic

judgment made after examination of all of the evidence.

Prior to the sentencing hearing, Morchower received the Psychosexual

Evaluation Report of Dr. Nelson.  That Report contained overwhelming

mitigating evidence.  Despite this evidence in favor of Wood, Morchower

failed at the sentencing hearing to elicit from the expert Dr. Nelson the fact

that he did not believe Wood was likely to re-offend, that he was very

amenable to treatment, and that there were many stressors in his life that led

up to this aberrant behavior, thus eliminating an enduring sexual deviancy that indicates a likelihood of re-offending, can only be viewed as performance that was unreasonable under prevailing professional norms.

The very ground on which the state prosecutor argued for a sentence of 19 years could have been undercut substantially if Morchower had elicited all of the favorable portions of the Psychosexual Evaluation and questioned Dr. Nelson on his reasons for arriving at his conclusions. However, Morchower did nothing to minimize Wood's conduct or to compartmentalize it as aberrant and have the expert explain what led up to Wood's criminal act and why it is that he would not pose a danger to the public when released. All of this information was contained within the evaluation and Dr. Nelson even reiterated it in an Addendum sent to both Morchower and the prosecutor. Indeed, the Addendum provided Morchower with all of the ammunition he needed to counter the state's argument that Wood should receive a sentence that would keep him incarcerated until he was 60 years old.

Morchower, however, used nothing in the Evaluation to help his client at sentencing. Instead, he made disparaging remarks about Wood, told the court he needed to be "whacked," that Wood "breached everyone's confidences," and tells the court that Wood's conduct "was despicable." His

presentation at sentencing was more of an argument in favor of a high sentence, rather than one asking for leniency. He focused not on Wood as an individual and failed to present anything to the court about his law-abiding life up to this point, his working career, or his deep remorse for what occurred. The performance of Morchower cannot be approved as a "strategic choice made after thorough investigation of law and facts relevant to plausible options[.]" *Strickland*, 466 at 690. Choosing not to present mitigating evidence through the court-appointed expert is not a plausible option in a case where the state's argument for a severely harsh sentence can be undercut by the opinion of that expert. Indeed, Dr. Nelson had already indicated in his Addendum that he defended his conclusions that Wood would be amenable to treatment, was not likely to re-offend, and that his behavior could be attributed to a combination of stressors in his life and not due to a sexual deviancy. Thus, failure to elicit this testimony from Dr. Nelson constituted performance that clearly fell below an objective standard of reasonableness.

Next, Wood must demonstrate that his counsel's deficient performance prejudiced him. The sentence of 19 years satisfies this prong. The recommended guideline range for Woods offense was 7 to 15 years.

Given the Report of Dr. Nelson and the abundance of mitigating evidence it contained, there is a very real probability that had Morchower elicited that mitigation from Dr. Nelson and presented testimony of those in the community who knew Wood personally, knew of his work history, and other aspects of his character, Wood would have received a sentence of less than 19 years.

As with Ground Four, Wood asserts this Sixth Amendment claim for the first time in this Court and relies on *Martinez v. Ryan*, __ U.S. __, 132 S.Ct. 1309, to excuse any procedural default. Because Virginia requires a prisoner to raise an ineffective assistance of trial counsel claim in a collateral proceeding, a petitioner may "establish cause for a default of an ineffective assistance claim" where the claim should have been raised, but counsel in the initial-review collateral proceeding was ineffective under the standards of *Strickland v. Washington.*

Attorney Grove filed Wood's state habeas corpus petition. He did not raise in state collateral review the claim that Wood's attorney rendered ineffective assistance of counsel at the sentencing phase, as his counsel failed to adequately prepare for the hearing and failed to elicit testimony from the expert favorable to Wood on matters of utmost importance, i.e.

likelihood of re-offending, amenability to treatment, and motivation for committing the crime. The failure to specifically state this claim constitutes ineffective assistance of counsel by Grove.

The two-part test announced in *Strickland's* is first, whether counsel's efforts were objectively unreasonable when measured against prevailing professional norms and, second, whether counsel's performance, if deficient, prejudiced Wood. *Id.* State habeas counsel's failure to raise Ground Five was unreasonable based on Morchower's abysmal performance at sentencing that jumps off of the pages of the sentencing hearing transcript. The transcript is painful to read, as it is apparent that attorney Morchower is confused, has no plan or strategy, and fails to elicit the plethora of favorable evidence contained in the expert's report. Given this evidence, it was objectively unreasonable for state habeas counsel to fail to raise the claim that attorney Morchower rendered ineffective assistance at the sentencing phase.

As to the second prong of *Strickland*, there is a reasonable probability that, but for state habeas counsel's unprofessional error, the result of Wood's state habeas petition would have been different. That is to say, if this claim had been presented to the state court on collateral review, the circuit court

would have had to confront the fact that Morchower's performance at sentencing fell below an objective standard of reasonableness. Then, the state court would have had to examine whether the outcome could have been different. To that end, the state court would have been forced to recognize that the recommended range for Wood's offense was 7 to 15 years, that Wood was remorseful, he was amenable to treatment, he was not likely to re-offend, and his actions were mitigated, to a degree, by the many stressors he was dealing with in his personal life. Given this mitigating evidence, there is more than a reasonable probability that the state habeas court would have acknowledged that, but for attorney Morchower's deficient performance, there was a reasonable probability that Wood would have been sentenced to less time than he received.

In addition to meeting the *Strickland* analysis establishing cause for Wood's procedural default of this claim, he asserts that this claim, based on the substantive argument in support of Ground Five, has more than "some merit," as required by *Martinez*. Accordingly, Wood requests this Court consider Ground Five on the merits, as he has established cause for the procedural default of this claim.

WHEREFORE, Petitioner Wood respectfully requests this Court grant him relief on his Petition under 28 U.S.C. § 2254.


Respectfully submitted,

Amy L. Austin, Esquire
The Law Office of Amy L. Austin, PLLC
101 Shockoe Slip, Suite O
Richmond, VA  23219
804.343.1900 ph
804.343.1901 fax
amyaustinlawyer@gmail.com

VIRGINIA:

IN THE CIRCUIT COURT OF CHESTERFIELD COUNTY

CHARLES JOSHUA WOOD,

                Petitioner,

v.                         041CL12HC2369-00

JEFFREY L. NEWTON, SUPERINTENDENT
OF RIVERSIDE REGIONAL JAIL,

                Respondent.

## ORDER

Upon mature consideration of the petition of Charles Joshua Wood for a writ of habeas corpus, the motion to dismiss of the respondent, the arguments of counsel made before this Court on November 28, 2012 and a review of the record in the criminal case of *Commonwealth v. Charles Joshua Wood* which is hereby made a part of the record in this matter, the Court finds for the reasons stated below that the petitioner is not entitled to the relief sought.

The petitioner presented the following claims in his petition:

    A.    His attorney was ineffective for not:

        1.    Properly advising him of his rights, the effect of his plea on subsequent motions and whether the petitioner had a defense to the charge;

        2.    Investigating his defenses;

        3.    Filing proper post-sentencing motions.

    B.    The trial court improperly denied a continuance.

The Court rules, based on the findings of fact and the conclusions of law made in this Court's letter opinion of January 8, 2013 (Attached hereto) and for the reasons set forth therein, that, because claim 2 could have been raised at trial or on appeal, it is barred by *Slayton v. Parrigan*, 215 Va. 27, 205 S.E.2d 680 (1974), as not cognizable in habeas corpus. The Court rules, based on those findings of fact and conclusions of fact, that under the criteria set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), the petitioner has not shown that his attorney was ineffective with respect to claim 1 and that, therefore, that claim should also be dismissed.

For the foregoing reasons, the Court believes that the petition for a writ of habeas corpus should be denied and dismissed; it is, therefore,

ADJUDGED and ORDERED that the petition for a writ of habeas corpus be, and is hereby, denied and dismissed, to which action of this Court the petitioner's exceptions are noted.

The Clerk is directed to forward a certified copy of this Order to the petitioner, Joseph F. Grove, Esquire, counsel for petitioner, and to Eugene Murphy, Senior Assistant Attorney General, counsel for respondent.

All matters having been fully resolved, this matter is ended.

Enter this ___ day of _____ 2013

_____

Judge

2

From: Joseph E. Greve, PC

I ask for this:

_____
Counsel for Respondent

Seen and objected to:

_____
Counsel for Petitioner

## VIRGINIA:

*In the Supreme Court of Virginia held at the Supreme Court Building in the City of Richmond on* Wednesday *the* 23rd *day of* October, 2013.

Charles Joshua Wood,                                        Appellant,

   against            Record No. 130846
                      Circuit Court No. CL12HC-2369

Jeffrey L. Newton, Superintendent, etc.,                   Appellee.

         From the Circuit Court of Chesterfield County

         Upon review of the record in this case and consideration
of the argument submitted in support of and in opposition to the
granting of an appeal, the Court is of the opinion there is no
reversible error in the judgment complained of. Accordingly, the
Court refuses the petition for appeal.

         The rule to show cause previously entered herein is
discharged.

                      A Copy,

                      Teste:

                              Patricia L. Harrington, Clerk

                      By:
                              Deputy Clerk