IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

CHARLES JOSHUA WOOD,
        Petitioner,

v.                                                      Civil Action No. 3:14-cv-136-JAG

JOHN A. WOODSON,
        Respondent.

## MEMORANDUM OPINION

The petitioner challenges his 2012 conviction and sentence for the sexual assault of his minor stepdaughter in the Circuit Court of Chesterfield County, alleging that his trial attorney's mental infirmity and his state habeas attorney's subsequent incompetence acted to deprive him of his constitutional right to the effective assistance of counsel. The petitioner advances five claims in total; Claims Three, Four, and Five are each procedurally defaulted, leaving only Claims One and Two available for review on the merits. Because the petitioner cannot show that his trial counsel's alleged mental deterioration resulted in actual prejudice to his case, or that his state habeas attorney's performance was deficient, the Court GRANTS the motion to dismiss.

### I. Material Facts

The petitioner, Charles Wood, was indicted on a single count of object sexual penetration of his 16-year-old stepdaughter on May 16, 2011, by a Chesterfield County grand jury. Wood initially retained attorney John Rockecharlie for his defense. (Pet'r's Mem. In Supp., at 1.) Rockecharlie negotiated a plea deal with the Commonwealth, and the parties set the matter for a plea hearing on June 30, 2011. (*Id.*) A week before the hearing, however, Wood decided to switch attorneys; attorney Michael Morchower filed a substitution of counsel form on June 23, noting his appearance on behalf of Wood. (*Id.*) The Chesterfield County Circuit Court approved

Morchower's substitution on June 29, the day before the scheduled plea hearing. (*Id.*) On the day of the hearing, Morchower requested a continuance. (*Id.*) The Circuit Court denied the motion, and the plea proceeded as scheduled. (*Id.*)

At that hearing, Wood entered a plea of guilty, signing a plea agreement that noted that the Commonwealth would "not seek indictments for the rape and forcible sodomy charges occurring during the same incident." (Plea Agreement, at ¶¶ 2-3.) The plea agreement also laid out the sentencing procedures that would apply: the Court would sentence Wood after receipt and review of a psycho-sexual evaluation of Wood, and after hearing argument from the parties as to mitigating and aggravating factors. (*Id.* at ¶ 5.) The plea agreement was silent on the potential length of Wood's sentence, and made no mention of any agreement as to sentence recommendations: "This plea agreement is the total agreement between the parties . . . there have been no other inducements, promises, threats, or coercion of any kind imposed upon the Defendant or suggested to the Defendant by the Attorney for the Commonwealth. . ." (*Id.* at ¶ 6.) The plea agreement finally noted that Wood surrendered his right to appeal the Circuit Court's sentence. (*Id.* at ¶ 7.)

During the guilty plea colloquy, Wood admitted his guilt and the voluntary nature of his plea, and confirmed that he had had "ample time to discuss any possible defenses" with his attorney, Morchower. (Transcript of Plea Hearing, pp. 4-5.) The Commonwealth proffered, in light of the "sensitive nature" of the case, "the barest of the facts" supporting the defendant's guilt: namely, that Wood gave his minor stepdaughter an alcoholic beverage spiked with Ambien. (*Id.* at 5-6.) The girl fell asleep shortly thereafter, but was rudely awakened later that night to find Wood on top of her. (*Id.* at 6.) The Circuit Court accepted Wood's plea.

After the plea hearing, at the request of a family friend of Wood's, Morchower returned to the courthouse and told the prosecutor, David Rigler, that he thought there had been an agreement

between Rigler and Wood's previous attorney, Rockecharlie, to limit the possible sentence Wood could receive to 15 years, the maximum amount recommended by the sentencing guidelines. (*Id.* at 2-3.) Rigler told Morchower that while the guideline range was between 7 and 15 years, there was no agreement about the length of Wood's sentence in the terms of the plea. (*Id.* at 3.) Wood did not appeal his conviction. (Resp't's Mem. Supp., ¶ 2.)

At the sentencing hearing on November 14, 2011, the Circuit Court, having reviewed Dr. Evan Nelson's court-ordered psycho-sexual evaluation of Wood, heard sentencing arguments from Morchower and the Commonwealth.[1] (Pet'r's Mem. In Supp., 5-8.) In the midst of his attorney's sentencing argument, Wood suddenly interrupted the proceedings—despite the Court's assurances that he would be able to speak later—and expressed remorse for his actions, countering Morchower's request that the Court sentence Wood to a prison term of only "single digits" with his *own* demand for a *harsher* sentence more reflective of his culpability: "I don't want single digits, give me double." (Sentencing Hearing Transcript, pp. 27-28.) The Court eventually obliged, sentencing Wood to 40 years of imprisonment, with 21 years suspended.

On November 22, 2011, Morchower filed a Motion to Recuse and Set Aside the 19 Year Sentence and Order a New Trial with a Newly Appointed Judge and Commonwealth Attorney. (Pet'r's Mem. In Supp., at 8-9.) Morchower's motion was based on his earlier-stated belief that he had an agreement with Rigler that the state would request a 15-year sentence. (*Id.* at 9.) Before the Circuit Court could rule on the motion, however, it was withdrawn by David Epperly, an attorney apparently hired by Morchower or assigned by some other entity to wrap up Morchower's affairs upon Morchower's diagnosis—after the hearing—of dementia. (*Id.* at 9.)

On August 7, 2012, Wood's next attorney, Joseph Grove, filed a petition for a writ of habeas corpus in the Circuit Court of Chesterfield County, Virginia. (Resp't's Mem. Supp. ¶ 3.)

---

[1] Wood takes issue with the coherence and efficacy of Morchower's arguments at sentencing.

3

The petition alleged three claims—the first three claims that Wood now alleges in his federal habeas petition. (*Id.* at ¶ 6.) On February 5, 2013, the Circuit Court denied Wood's petition, holding that Wood had not shown Morchower was ineffective. (Pet'r's Mem. Supp. Pet., 10.) Wood filed a petition for appeal in the Virginia Supreme Court on May 28, 2013. (Resp't's Mem. Supp., at ¶ 4.) The Supreme Court dismissed the petition on October 23, 2013. (*Id.*)

### III. Standard of Review

#### A. Exhaustion & Procedural Default

A federal court reviewing a habeas petition filed pursuant to 28 U.S.C. § 2254 must initially determine whether the petitioner has properly exhausted his claims—that is, whether the state courts have gotten a first crack at the specific issues the petitioner raises. A petitioner's failure to properly exhaust claims constitutes a jurisdictional bar on the Court's ability to hear the petitioner's claims. Accordingly, this Court may not grant a petitioner relief unless he can demonstrate that he "has exhausted the remedies available in the courts of the State" of which he is in custody. 28 U.S.C. § 2254(b)(1)(A); *see also Slavek v. Hinkle*, 359 F. Supp. 2d 473, 479 (E.D. Va. 2005) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 491–92 & n.10 (1973)). Exhaustion requires not only that all possible remedies be utilized before seeking relief in federal court, but also that any given claim first be "fairly present[ed]" to the state's highest court for disposition. *Matthews v. Evatt*, 105 F.3d 907, 910–11 (4th Cir. 1997).

#### B. Applicable Constraints on Federal Habeas Corpus Review

In order to obtain federal habeas relief, at a minimum, a petitioner must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996 further circumscribes this Court's authority to grant relief by way of a writ of habeas corpus. 28 U.S.C.

§ 2254 *et seq.* "State court factual determinations are presumed to be correct and may be rebutted only by clear and convincing evidence." *Gray v. Branker*, 529 F.3d 220, 228 (4th Cir. 2008).[2]

The district court's review of the state court's factual findings is purposefully narrow. *See Cullen v. Pinholster*, 131 S. Ct. 1388, 1399 (2011) (holding that the district court's review under § 2254(d) is limited to the evidentiary record before the state court because "[i]t would be contrary to [AEDPA's] purpose to allow a petitioner to overcome an adverse state-court decision with new evidence introduced in a federal habeas court and reviewed by that court in the first instance effectively *de novo*").

Additionally, a federal court may *not* grant habeas relief with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see Appleby v. Warden*, 595 F.3d 532, 535 (4th Cir. 2010) (quoting *Cummings v. Polk*, 475 F.3d 230, 237 (4th Cir. 2007)). "[T]o obtain federal habeas relief, 'a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in the existing law beyond any possibility for fairminded disagreement.'" *Jackson v. Kelly*, 650 F.3d 477, 492 (4th Cir. 2011) (quoting *Harrington v. Richter*, 131 S. Ct. 770, 786–87 (2011)). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 131 S. Ct. at 786 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). By design, this

---

[2] The AEDPA itself states that the "determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

highly deferential standard is "difficult to meet," and governs this Court's review of all legal determinations made on the merits by state habeas courts. *Id.*

## IV. DISCUSSION

Wood has properly exhausted each of his first three claims, and the Court reviews them in turn below. Claims One and Two allege separate instances of ineffective assistance on the part of Wood's trial counsel, and the Court applies the Supreme Court's two-pronged *Strickland* test in weighing their merits.[3] Wood satisfies neither prong on either of the claims; Claims One and Two are accordingly dismissed. Wood's third claim, challenging the Circuit Court's denial of Wood's motion for a continuance on the day of his guilty plea hearing, is procedurally barred, and so the Court dismisses Claim Three. Wood did not raise his fourth and fifth claims in his state habeas petition; because the state courts have not had the opportunity to review the merits of those claims, Claims Four and Five are not exhausted. Wood does not demonstrate that this procedural default should be excused, and so the Court dismisses Claims Four and Five.

### A. Exhausted Claims (Morchower's Ineffective Assistance of Counsel)

#### *1. Claim One: Trial Counsel's Failure to Advise*

Wood's first claim alleges that Morchower failed to advise Wood of his rights with respect to his guilty plea by (1) misrepresenting the length of the sentence that Wood faced, (2) failing to advise Wood that a guilty plea would result in the loss of his right to appeal, and (3) failing to advise Wood of the possibility of filing post-trial motions or an appeal.[4] The factual record fails to support any of these three arguments.

---

[3] *See Strickland v. Washington*, 466 U.S. 668, 685 (1984).
[4] Specifically, Wood alleges that Morchower advised him that the maximum possible sentence he could receive for pleading guilty was 15 years imprisonment. Wood also alleges that Morchower should have advised him of the possibility of filing post-trial motions and an appeal.

6

The Court applies a modified version of the *Strickland* "cause and prejudice" test when reviewing claims of ineffective assistance of counsel in the context of a guilty plea.[5] Wood bears the burden of demonstrating that (1) Morchower's performance was deficient and (2) "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.*[6]

Wood reserves most of his ammunition for his first argument: Morchower misrepresented the length of his potential sentence by claiming the Commonwealth had agreed to request a sentence within a 7 to 15 year range. Such erroneous advice, however, is insufficient, on its own, to support a finding of prejudice.[7]

Unfortunately for Wood, the remainder of the facts at play run directly *counter* to a finding that Wood would have proceeded to trial had he known that he faced a sentence in excess of 15 years.[8] Wood, in the midst of his attorney's appeal for a sentence "in the single digits" interrupted to insist that such a lenient sentence would be inappropriate: "give me double digits." Wood's penitent attitude—"they are good people, and I hurt them"—was entirely consistent throughout the proceedings. The record provides no factual support for any conclusion other than that Wood was

---

[5] *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

[6] The Court may consider either prong before turning to the second; in other words, the Court need not reach the question of whether Morchower's performance satisfies the "deficient performance" prong if a review of the case determines that the petitioner cannot satisfy the "prejudice" prong. *See id.* at 60.

[7] *See Hughes v. United States*, No. 1:05CV57, 2007 WL 841940 at *4 (W.D.N.C. 2007) ("Several Circuits of the United States Court of Appeals have found that a "miscalculation or erroneous sentence estimation by defense counsel is not a constitutionally deficient performance rising to the level of ineffective assistance of counsel.") (citing *United States v. Gordon*, 4 F.3d 1567, 1570 (10th Cir. 1993); *Bethel v. United States*, 458 F.3d 711, 717 (7th Cir. 2006), cert. *denied*, 127 S.Ct. 1027 (2007); *United States v. Foster*, 68 F.3d 86, 87–88 (4th Cir. 1995).

[8] Neither the plea agreement nor guilty plea colloquy mention the statutory maximum sentence Wood faced—life. *See* Va. Code § 18.2-67.2. Wood does *not* affirmatively assert, however, that he was unaware of the potential statutory maximum available for the charged offense, or that his attorneys or prior court proceedings did not inform him of that fact. Likewise, Wood does not deny the Commonwealth's assertion that it repeatedly told Wood of his exposure to a prison term in excess of 15 years (Mr. Rigler states that he told Wood, prior to his plea, that "this was a twenty year case" and "a life case with a jury."). (Circuit Court habeas records, pg. 30.)

ready to accept whatever sentence the Circuit Court imposed. Further, Wood knew that the Commonwealth had *not agreed to recommend a sentence* when he reviewed and signed the plea agreement. That document expressly stated that (1) the Court alone would determine Wood's sentence and (2) that no agreements existed between the Commonwealth and Wood as to sentencing. Wood also knew, by virtue of that same plea agreement, that he was receiving a not-insubstantial benefit from pleading guilty: the Commonwealth agreed not to seek indictments for rape and forcible sodomy—charges that carry a potential sentence of life in prison.[9] Wood's argument, boiled down, amounts to a bare, unsupported assertion that he would have been willing to accept 15 years—but not 19. Nothing in the record supports this claim.

Wood's second argument for failure to advise—that Morchower's alleged failure to advise him of the plea agreement's effect on his right to appeal amounted to ineffective assistance of counsel—fails for the same reasons. Wood, again, bears the burden of establishing *Hill*'s prejudice prong: demonstrating that he would have *rejected* the plea agreement and proceeded to trial had he known that accepting the plea would result in the loss of his right to appeal. Wood signed a plea agreement that explicitly explained the plea's effect on his appeal rights; he received a substantial benefit from that plea; and he displayed an eagerness to accept his conviction and punishment. Wood cannot provide factual support for his prejudice claim, and the Court dismisses this claim.

Finally, Wood's argument that Morchower's failure to file an appeal constituted deficient performance is bereft of any facts that could support such a conclusion. The Court notes, first, that Wood does not claim to have ever requested that Morchower file an appeal, so any error can only exist if Morchower failed to *consult* with Wood on the issue. There is no *per se* rule that an attorney must consult with his client about an appeal. Instead,

---

[9] *See* Va. Code Ann. §§ 18.2-61, 67.1.

> counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing.

*Roe v. Flores-Ortega*, 528 U.S. 470, 480 (2000). Wood alleges nothing in the way of facts that could support a finding under either possibility. Wood signed a plea agreement devoid of any sentencing agreement or recommendation language, professed his satisfaction with his defense during the plea colloquy, lobbied the Circuit Court for a harsh sentence, and apologized profusely and repeatedly at sentencing. Nothing in these facts indicates a client who—during the relevant, immediate post-sentencing time period—desired to file an appeal. That Wood apparently now regrets his disinterest in filing such an appeal does not retroactively entitle him to the relief he apparently freely forfeited.

### 2. Claim Two: Trial Counsel's Failure to Investigate Possible Defenses

Wood's second claim asserts that Morchower failed to investigate Wood's potential defenses and/or offer such evidence in mitigation at sentencing. *Strickland* again applies, and Wood cannot satisfy either of its deficient performance and actual prejudice prongs. As the Circuit Court noted in its letter opinion, Morchower's alleged failure to undertake an investigation into Wood's claimed "possible defenses" can hardly be described as deficient performance. Morchower had been retained as counsel the *day before* Wood's guilty plea, and Morchower's motion for a continuance was denied. Morchower had no time to conduct the discovery Wood demands, and his only legal recourse to secure more time was rejected. Further, Wood can point to nothing in the record to demonstrate that he *himself* actually desired such an "investigation." To the contrary, Wood appears to have had no illusions as to his culpability or doubt as to his guilt. He freely admitted his guilt, and his expressions of remorse (and disgust at his own actions) reached theatrical proportions by the time of his sentencing.

Second, the Circuit Court held, Wood could not demonstrate that Morchower's failure to find and proffer Wood's nebulous "possible defenses" prejudiced Wood—for the simple fact that no such defenses could be imagined, let alone find plausible support in the facts of the case. Wood—by his own admission—lured his minor stepdaughter home, drugged her into a drunken slumber, and then sexually assaulted her. Wood, despite talk of unexamined "defenses," proffers only one, consent. Such a defense was likely legally unavailable, and certainly practically unpalatable.[10] Morchower's alleged failure to investigate such a defense could not have prejudiced Wood.[11] Likewise, Wood's insistence that Morchower's later (asserted) failure to introduce evidence of such "consent" as "mitigating evidence" at his resulted in prejudice to Wood is equally invalid and tone-deaf.[12]

The Circuit Court's findings are eminently reasonable, and Wood, who bears the burden of satisfying *Strickland*'s cause and effect prongs, cannot do so. Claim Two is dismissed.

### *3. Claim Three: Trial Court's Denial of Motion for Continuance*

Wood's final exhausted claim asserts that the state trial court abused its discretion in denying Morchower's motion for a continuance, thereby depriving Wood of his constitutional right to effective counsel. Wood did not appeal the Circuit Court's decision, raising the issue for the first time in his state habeas petition. The Circuit Court held that Wood's failure to appeal the

---

[10] Wood's stepdaughter was drugged (with Ambien), likely intoxicated (the vehicle for the Ambien), asleep, and a minor (age 16) when Wood performed the sexual assault in question—all factors undermining her "mental capacity" to consent. *See* Va. Code 18.2-67.2, 67.10.

[11] The burden of demonstrating actual, resultant prejudice rests with Wood, and requires a showing of a reasonable probability that, but for counsel's deficient conduct, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. A reasonable probability is one "sufficient to undermine confidence in the outcome." *Id.* Wood proffers nothing that undermines—in the slightest—his guilt on the charge of conviction.

[12] Wood describes, vaguely, certain text messages and emails exchanged between Wood and his minor stepdaughter—sent before, of course, Wood drugged and sexually assaulted the 16-year-old in her sleep. The Circuit Court's conclusion that appealing to this (illegal) relationship at sentencing would *not* have played a mitigating role is indisputably the type of finding upon which "fairminded jurists could disagree," and to which this Court must apply the AEDPA's deferential standard of review. *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004).

Circuit Court's ruling constituted a procedural default, pursuant to the Virginia Supreme Court's holding in *Slayton* that "[a] prisoner is not entitled to use habeas corpus to circumvent the trial and appellate processes for an inquiry into an alleged non-jurisdictional defect of a judgment of conviction." *Slayton v. Parrigan*, 215 Va. 27, 30 (1974).

The Circuit Court's holding is entitled to a presumption of correctness provided the Circuit Court (1) explicitly relied upon the procedural ground in denying the motion and (2) the procedural default rule relied upon by the Court must constitute an adequate and independent basis for denying relief. *See Harris v. Reed*, 489 U.S. 255, 259-60 (1989); *Clanton v. Muncy*, 845 F.2d 1238, 1241 (4th Cir. 1988). The Circuit Court explicitly relied upon *Slayton*'s procedural bar in denying Wood's motion, and the Fourth Circuit has consistently held that "the procedural default rule set forth in *Slayton* constitutes an adequate and independent state law ground for decision." *Mu'Min v. Pruett*, 125 F.3d 192, 196-97 (4th Cir. 1997). Accordingly, Wood's third claim is procedurally defaulted, and thus dismissed.

### C. <u>Unexhausted Claims</u>

Wood candidly acknowledges his failure to advance either his fourth or fifth claims in his initial state habeas petition, an omission that typically triggers a procedural default.[13] Wood relies on the Supreme Court's recent decision, in *Martinez v. Ryan*, to argue his procedural default should be excused in this instance.[14] Wood relies on the allegedly ineffective assistance of his *state* habeas attorney, arguing Grove's deficient performance fatally undermined his initial opportunity to present his claims of ineffective assistance of his trial counsel. Because Wood

---

[13] *Coleman v. Thompson*, 501 U.S. 722, 732 (1991); *Teague v. Lane*, 489 U.S. 288 (1989).

[14] Ineffective assistance of counsel at an initial-review collateral proceeding may constitute cause to excuse a procedural bar if: (1) the state law requires that ineffective assistance of trial counsel claims be raised in an initial-review collateral proceeding; (2) at the initial-review collateral proceeding, either the state did not appoint counsel or counsel was ineffective under *Strickland*; and (3) the underlying ineffective assistance of trial counsel claim is substantial. *Martinez v. Ryan*, 132 S.Ct. 1309 (2012).

cannot demonstrate that his state habeas attorney was ineffective—as to either Claim Four or Five—*Martinez* cannot excuse his default. Wood's fourth and fifth claims are procedurally barred, and must be dismissed.

### *1. Claim Four: Trial Counsel's Mental Impairment*

Wood's fourth claim asserts that his trial attorney's cognitive impairment acted to deprive him of his Sixth Amendment right to effective assistance of counsel—and that his procedural default of this claim should be excused because his state habeas attorney, Grove, was ineffective in failing to raise this claim as its own, independent basis for relief.

Virginia restricts ineffective assistance of counsel claims to habeas proceedings, satisfying the first of *Martinez*'s three prongs. Wood's claim falls apart on the second prong, however, because Grove was not ineffective in deciding not to rely upon Morchower's mental condition as the sole basis for an ineffective assistance of counsel claim. Grove raised three *other* ineffective assistance of counsel claims in Wood's state habeas petition, basing his arguments in support of those claims—at least in part—on Morchower's alleged mental infirmity. The Circuit Court (and the Virginia Supreme Court) were under no illusions as to Wood's belief that Morchower had been rendered incompetent by his mental condition: Grove directly attributed one claim to Morchower's continuing mental deterioration, and later described that attorney as being afflicted, during the proceedings, with memory loss and confusion. The state courts were well aware of Morchower's condition when they reviewed—and dismissed—Wood's state habeas petition.

Further, Grove's decision not to include an ineffective assistance of counsel claim based solely on Morchower's medical condition was a reasoned, well-researched decision in an area devoid of controlling Fourth Circuit precedent.[15] The Court "must indulge a strong presumption

---

[15] The Eighth Circuit case law Wood cites (mental condition as *per se* ineffectiveness) is not binding on this court (or, of course, the Circuit Court). Grove's research indicated that the Ninth Circuit had more recently reached the precisely opposite conclusion, holding that mental

12

that counsel's conduct falls within the wide range of reasonable professional assistance," and Wood does not advance any facts that fairly place Grove's performance outside that "wide range" of acceptable attorney performance. *Strickland*, 466 U.S. at 689.

Claim Four is dismissed.

### *2. Claim Five: Failure to Elicit Mitigating Testimony at Sentencing*

Wood's final claim asserts that Morchower did not "adequately prepare" for the sentencing hearing, most notably by failing to elicit important, mitigating information during his examination of the court-appointed psychologist during the hearing.

Wood proffers the same excuse for his procedural default in this claim, and so the *Martinez* rubric applied to Claim Four applies in equal force to Claim Five. Wood's hopes for success are again dashed on the second prong of that three-part test: Grove's performance was not ineffective, and so Wood's procedural default is not excused.

Wood's arguments as to Morchower's ineffectiveness at sentencing essentially boil down to this: Morchower failed to ask Dr. Evan Nelson the questions that would have demonstrated to the Circuit Court that Wood was a penitent, first-time offender, driven by extraordinary circumstances rather than an inherent deviancy, amenable to treatment and unlikely to re-offend. A review of the transcript shows that Morchower's cross examination of Dr. Nelson did not cover all of those topics. Morchower's failure to draw those mitigating nuggets from Dr. Nelson, however, did not preclude the Circuit Court from learning about each allegedly crucial factoid. The Commonwealth, during its *direct* examination of Dr. Nelson, helpfully asked about: (1) Wood's particularly vulnerable, intoxicated state during the incident in question; (2) his amenability to treatment; (3) his lack of any prior criminal history; and (4) his solid employment track record. Morchower, during his subsequent cross examination of Dr. Nelson, also gleaned

---

impairment does not create *per se* ineffectiveness, and the petitioner must still demonstrate resultant prejudice to his or her case. The Fourth Circuit has not addressed this issue.

13

the highly mitigating admission that Wood was a "much lower" recidivism risk than other sex offenders.

That the Circuit Court was aware of these mitigating factors—and considered them before announcing sentence—is similarly on the record, and without dispute:

> I give you credit for the worthwhile, constructive aspects of your life until this occurred. I note that you have no prior record; that you were a productive member of society. And I credit Dr. Nelson's testimony that you were someone who has the qualities necessary to be amen[able] to treatment.

(Transcript of Sentencing Hearing, pg. 40.) Grove's conclusion that Morchower's performance at sentencing could not have prejudiced Wood was a reasonable one; his decision *not* to bring a claim without factual merit can hardly be described as deficient performance. Because Wood cannot demonstrate that Grove's performance on this issue was ineffective, he cannot establish cause for his procedural default. Claim Five thus remains procedurally barred; it is dismissed.

## V. CONCLUSION

For the reasons above, the Court GRANTS the respondent's motion to dismiss. Wood's claims will be DISMISSED, and his § 2254 petition is DENIED. The action is DISMISSED. A certificate of appealability will be DENIED.[16]

The Court shall enter a Final Order.

Date: October 23, 2014
Richmond, Virginia

/s/ 
John A. Gibney, Jr.
United States District Judge

---

[16] An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A). A COA will not issue unless a prisoner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). Wood fails to meet this standard.

14